AUGUSTUS T. GRAY ET AL., RELATORS, v. SPENCER MIL-
LER, Jr., STATE HIGHWAY COMMISSIONER, RESPOND-
ENT.

Argued October 7, 1942—Decided August 13, 1943.

Before Justices CASE, DONGES and COLIE.

For the relators, *Arthur E. Dienst.*

For the respondent, *David T. Wilentz* and *William J. McCormack.*

The opinion of the court was delivered by

DONGES, J. This matter is before the court on the return of a rule to show cause why a peremptory or alternative writ of *mandamus* should not issue directing the respondent, State Highway Commissioner, "to institute condemnation proceedings to determine the amount to be paid for damages to the lands of the relators caused by the State Highway Department's taking of the drainage rights on, over and across the said lands."

The facts are substantially uncontroverted. The State Highway Department, in 1928, commenced the construction of Route No. 29 across lands of the relators. As part of the

operation "there were two catch basins constructed" and a "pipe was laid along Oakland Avenue for an outlet." This was testified to by relator, Augustus T. Gray, and other witnesses. It is the condition alleged to have been created by this drainage system that relators now seek to be paid for. They allege that their lands have been damaged by being flooded by water due to the installation of this system.

The relator testified that the condition existed when the condemnation proceedings were instituted by the state on August 1st, 1930, and continued throughout the hearings before the condemnation commissioners. Upon their making an award, both parties appealed to the Union County Circuit Court. In the orders of Judge Cleary framing the issue on the appeals, it is stated that the issues to be tried include: "The value of the lands taken and the damages sustained by reason of the taking and condemning thereof * * *." Before the appeals were heard, the parties agreed to a settlement and Gray, and his wife, executed a deed for the lands taken by the State Highway Department. This deed is dated June 12th, 1931, acknowledged July 21st, 1931, and delivered some time thereafter, the check of the department being dated October 16th, 1931.

Relator testified that the flooding began long before the institution of the condemnation proceedings and continued throughout their existence and was known to him during all of that time. Photographs were taken for relators and introduced in evidence showing conditions as they existed on January 2d, 1931, several months before the orders framing the issues on appeal were entered.

Gray testified (the Mr. De Voe referred to being his counsel in the earlier proceeding):

"Q. Now, you say you had discussed this pond situation with Mr. De Voe before you got your check? A. Yes, sir. I know the settlement had been agreed upon when I discussed it with him.

"Q. You had agreed upon a settlement figure with the state? A. Yes.

"Q. Before you discussed the question of the pond with Mr. De Voe? A. That is right.

"Q. Now, hadn't you, prior to the time you agreed upon your settlement figure, noticed this water flowing over your land? A. Oh, yes; because that water was on the lands in 1930. It was prior to these photographs.

"Q. The water came onto your land from at least 1930 on? A. In that period.

"Q. Didn't you discuss this water situation with Mr. De Voe before this case came up before the condemnation commissioners? A. It is possible. I remember very distinctly discussing it with him after the settlement had been agreed upon, because I remember very definitely what he told me to do.

"Q. Didn't you discuss this water situation also with the expert witnesses who testified for you before the condemnation commissioners? A. It is possible. That testimony is a matter of record.

"Q. Didn't you testify at all as to the fact the construction of the highway and the construction of this pipe put water over on your property? A. We testified as to the damages to the remaining portion of the property."

He further testified that it was possible that testimony that the land was damaged by being flooded by the water was introduced but he did not recall, and finally expressed the attitude of relators by asserting: "The State of New Jersey bought no water rights on my property in the deed that I gave them." It is upon this claim that relators largely rely in this present proceeding.

Clearly, if the condemnation proceeding had been concluded by trial on the appeals there could be no question that relators would be precluded from any recovery for damages that could and should have been included in any award.

The rule is firmly established in this state that when land is taken under proceedings in eminent domain the owner "is entitled to recover for all damages, present and prospective, which may be known or may reasonably be expected to result from the construction and maintenance of the improvement in a proper and legal manner since there cannot be successive proceedings." *Sterner* v. *Nixon,* 116 *N. J. L.* 418, 421; 20 *C. J.* 763, 764.

Relator may not stand by and have an issue framed, and the matter determined and settled upon what he claims to be less than complete compensation for all damages, and then more than ten years later seek further damages which might have been included in the original proceeding. *Bowen* v. *State Highway Commission*, 8 *N. J. Mis. R.* 252, 254.

In the instant case, there was an award by commissioners, an appeal therefrom by both parties, and a settlement between the parties, advanced by relators, as shown by their attorney's letter. *Exhibit S-19*. It is clear that the settlement was of the award and the full and complete demand of relators, which, under the settled law of this state, must include the consequential damages now sought to be recovered. Even if this were not so, relators have been guilty of such laches as to deprive them of any present right of suit. We put our decision, however, upon the broader ground that all claims were included in the award, which was settled by the parties.

The rule to show cause is discharged, with costs.